73  297
80  490

MINNIE FEIERTAG v. JULIA FEIERTAG.

*Pleading—Bill of particulars—Services—Money had and received—
Trial—Admission of incompetent testimony—Charge
to jury—Error.*

1. Under a bill of particulars limiting plaintiff's demands to pay for services rendered and money loaned the defendant, a recovery cannot be had for money had and received by the defendant for the use of the plaintiff.

2. The claim of plaintiff for pay for services rendered defendant is held to have been rightly excluded by the court.

3. Where it is evident that the jury have been influenced in arriving at a verdict by testimony improperly admitted on the trial, striking it from the case, with an instruction to disregard it, will not cure the error.

Error to Wayne. (Brevoort, J.) Argued October 18, 1888. Decided January 18, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*John G. Hawley,* for appellant, contended:

1. On the facts of this case no action will lie; citing *Allen v. Allen,* 60 Mich. 635; *Robinson v. McAfee,* 59 Id. 375; *Mason v. Dunbar,* 43 Id. 407; *Coe v. Wager,* 42 Id. 49; *Neeley v. Rich,* 7 Bradw. 116; *Harris v. Currier,* 44 Vt. 468; *Prickett v. Prickett,* 20 N. J. Eq. 478, and cases cited in Am. Digest, 1887, 957.

2. The error in admitting improper testimony is not cured, because the wrong is not undone, by an instruction to the jury to disregard it; citing *Railroad Co. v. Van Steinburg,* 17 Mich. 99.

3. A charge based upon a hypothesis which there is no evidence to support is erroneous; citing *Chadwick v. Butler,* 28 Mich. 349; *Josselyn v. Bishop,* 25 Id. 397; *Hewitt v. Begole,* 22 Id. 31.

*E. T. Wood,* for plaintiff, contended:

1. Contracts between parent and child (when of age) are as binding as between any other class of individuals, and the decisions

cited by counsel for defendant, as well as all of the decisions of the courts, sustain this doctrine.

2. This Court will not weigh testimony when there are facts for a jury; citing *Bodoine v. Simmons*, 38 Mich. 682; and where the evidence tends to make out a case its force and effect are for the jury; citing *Cuddy v. Horn*, 46 Mich. 596; nor will the propriety of a verdict be reviewed in a higher court if there is evidence to sustain it; citing *DeMill v. Moffat*, 49 Mich. 126.

CHAMPLIN, J.  Minnie Feiertag is the step-daughter of Julia Feiertag, who is the divorced wife of Minnie's father.  In 1870, Minnie, then 15 years of age, learned the art of dress-making, and has ever since followed that employment.  At that time she lived with her father and step-mother, and so continued until 1881, when her step-mother obtained a divorce, and thereafter she continued to reside with her step-mother until sometime in 1887.

It will be observed that at the time of the divorce the plaintiff was 25 years of age or over, and nothing appears in the testimony to show that she was not an intelligent young lady.  When she commenced dress-making she served an apprenticeship of six months, and then commenced to earn wages.  These wages as received she turned over to her step-mother, and she gave her back spending money, and sometimes money to buy her clothes with, and at others the step-mother purchased them for her.  In May or June, 1880, the defendant desired the plaintiff to do dress-making at home, and she complied with the wishes of her step-mother, and gave to her the money which she received for her work.  She also performed other duties around the house, such as making fires in the morning, and getting breakfast, as a common occurrence.  The family consisted of Mrs. Feiertag, her daughter, a half-brother named Rudolph, and the plaintiff.  In the dull season of the year she did sewing for defendant and her son.

Out of the money which plaintiff received for dress-

making while working at home she was allowed to retain two dollars out of every six dollars received. With this she bought her clothing, and had deposited in the bank $150 or thereabouts. They lived as the members of one family, and no change was made in the manner of conducting affairs after plaintiff arrived at age. The plaintiff testified that she kept no account of the moneys she had earned or given to her mother, and had not the remotest idea of the amount she had earned in any given year; that the last two years prior to 1887 she did not do near the business that she did when she started into business, because she had everything to work against her. She testified that her earnings averaged from $3.50 to $8 per week. She also testified that she did not know that by law she was entitled to her own wages after she became of age, and her step-mother did not inform her upon the subject. The plaintiff left home in 1887, and on July 20, of that year brought this suit by declaration containing only common counts in *assumpsit*. She filed a bill of particulars as follows:

" To services rendered by the plaintiff for the defendant, at her request, from November 30, 1881, to April 4, 1887, 277 weeks and six days, at $6 per week, $1,667.24.
" To money loaned by the plaintiff to the defendant, at her request, at various times between November 30, 1881, and April 4, 1887, $2,000."

The defendant pleaded the general issue, and offset for board, and also the common counts in *assumpsit*. A trial in the circuit court resulted in a verdict for plaintiff of $1,667.24.

No testimony was introduced on the part of the defendant, and at the close of the plaintiff's testimony defendant's counsel requested the court to instruct the jury to find a verdict for the defendant. The court refused this request, but ruled that plaintiff could not recover any-

thing for services performed, but he should let the jury pass upon the question whether she paid any money to her step-mother, and, if so, how much, and what she is entitled to recover, if any. This ruling is assigned as error.

The only two facts in issue were those embraced in the bill of particulars,—one for services, and the other for money loaned. The item for services was rightly excluded by the court, and there was no testimony in the case which supported the item for money loaned. There was no item in the bill of particulars for money paid to defendant by plaintiff at her request, and for her use, and it would have been error for the court to submit that question to the jury. The court, however, in submitting the case to the jury, did so upon the theory of money had and received by the defendant for the use of the plaintiff. As before stated, the bill of particulars limited the claim of the plaintiff to two items, neither of which was for money had and received by the defendant for plaintiff's use; and consequently a recovery could not be had upon that theory. But, if the plaintiff were otherwise entitled to recover the judgment which she has obtained, we should be inclined to treat the bill of particulars as amended so as to cover the proof made, and not send the case back for this error.

We think there was sufficient testimony to go to the jury, under the count for money had and received, to determine whether there was an implied promise on the part of defendant that she would receive the money from the step-daughter for her use, over and above what she was in justice and equity entitled to retain for board, lodging, room-rent, and such moneys as she paid out for plaintiff's use. But the court erred in admitting testimony in the case against defendant's objections, some of which he afterwards excluded.

The testimony introduced showing what plaintiff earned at dress-making before she engaged in dress-making at home was irrelevant, and should have been excluded. Also the offer which she refused from Mrs. Wallace, of Port Huron, for the like reason. Also as to her ignorance that the law entitled her to her own wages after she arrived at the age of 21.

The plaintiff was permitted to call her father, and prove by him that he gave his earnings to defendant while he was her husband, and also that when the divorce was granted he conveyed to defendant two lots upon which there were dwellings which yielded a rental of $21.50. Plaintiff's counsel also endeavored to show by this witness that the consideration of the conveyance was that Mrs. Feiertag had agreed to support plaintiff, but plaintiff's father testified that he conveyed the land because he was compelled to do so by the court as alimony in the divorce suit. After the arguments of counsel were concluded, the court struck out all of the testimony of this witness, and directed the jury to disregard it. But the defendant's counsel claims that the testimony was prejudicial to his client, and the use of it made by the counsel in his argument to the jury could not be obliterated by the direction of the judge to the jury to disregard it. In this we are inclined to agree with counsel for defendant.

We have no knowledge of the argument which was made before the jury by counsel for plaintiff, but we have his argument made before us, and printed in his brief, after the testimony upon which it was based was stricken out, as follows:

"She sits in the shadow of her suspecting counsel, and says, by her silence (which sometimes speaks louder than words): 'Young woman, I don't deny the facts. You have stated them correctly. Your mother died when you

were a baby. I took you as soon as you were old enough to become useful. I saw to it that for ten years you went daily to the shop, and afterwards to the house drudgery which I generously heaped upon you. I provided a room in my house, where for six years you toiled and slaved, making me rich with your earnings.

"'I did all this because I had so shaped your life that you didn't know any better. You are no blood of mine, although I married your father. I got his earnings for eighteen years, and his property in a bulk on divorce proceedings, which you know will go to my own dear children when I am done with it. I admit I deceived, imposed on, and robbed you. You were a member of my family. My lawyer knows, and he says, the law protects me. No matter what your labor was worth, or what I agreed you should have, or what was agreed between your father and me when the property was turned over to me; you were foolish enough to keep right on without a settlement; you kept no account-book, and therefore I am not obliged to pay you anything.'"

The jury, although charged that the plaintiff could not recover for services rendered, yet returned a verdict for the exact sum claimed in the plaintiff's bill of particulars for services rendered. It is quite evident that the jury were influenced by the testimony, and argument based thereon. Such testimony was improperly admitted, and the harm was not remedied by striking it out.

The judgment must be reversed, and a new trial granted.

The plaintiff's 2d, 8th, and 9th requests, reading as follows, should not have been given. They were inapplicable to the case:

"2. A party to an action on a contract of employment is as competent as any other witness, if he knows the facts, to swear to the value of services."

"8. If you find that the defendant deceived the plaintiff as to her legal rights, and thereby obtained possession of the plaintiff's earnings, plaintiff is entitled to recover for such a sum or sums under all the circumstances you think she is entitled to.

"9. If you find that the plaintiff's earnings passed into the hands of the defendant after she arrived at her majority, and without her knowledge that she was legally entitled to retain them, then the payments of such money by the plaintiff to the defendant, considering the relation that existed between them, would amount to a mistake in law, and the plaintiff is entitled to recover."

After what has been said, the plaintiff's attorney will doubtless deem it proper to apply for leave to amend his bill of particulars before proceeding to another trial.

The judgment is reversed, and a new trial granted.

The other Justices concurred.